IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRISTOL-MYERS SQUIBB COMPANY,<br><br>        Plaintiff,<br><br>   v.<br><br>GENENTECH and CITY OF HOPE,<br><br>        Defendants.<br>_____/ | No. C 13-2045 SI<br><br>**ORDER GRANTING DEFENDANTS'**<br>**MOTION TO TRANSFER VENUE** |

Defendants' motion to transfer venue is scheduled for a hearing on July 26, 2013. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter is appropriate for resolution without oral argument, and VACATES the hearing. For the reasons set forth below, the Court GRANTS the motion to transfer venue and TRANSFERS this case to the United States District Court for the Central District of California.

**BACKGROUND**

On May 9, 2013, plaintiff Bristol-Myers Squibb Company ("Bristol-Myers") filed this action for declaratory relief against defendants Genentech and City of Hope. The complaint seeks a declaration that U.S. Patent No. 6,331,415, entitled "Methods of Producing Immunoglobulins, Vectors and Transformed Host Cells for Use Therein," (the "Cabilly II Patent"), and U.S. Patent No. 7,923,221, entitled "Methods of Making Antibody Heavy and Light Chains Having Specificity for a Desired Antigen," (the "Cabilly III Patent") are invalid and not infringed by two of plaintiff's products, Erbitux® and Yervoy®. The complaint alleges that "[d]efendants have asserted that the Cabilly Patents broadly cover the use of certain well-known, conventional recombinant methods to produce any

antibody product in any type of host cell," and that "[t]hrough its statements and actions, Genentech has made clear to the biopharmaceutical industry generally, and to Plaintiff in particular, that it contends that the claims of the Cabilly Patents effectively preclude others from commercially manufacturing recombinant monoclonal antibodies without Genentech's permission." Compl. ¶¶ 3, 36.

Plaintiff Bristol-Myers is a Delaware corporation with its principal place of business in New York. Compl. ¶ 8. Defendant Genentech is a Delaware corporation with its principal place of business in South San Francisco. *Id.* ¶ 9. Defendant City of Hope is a not-for-profit hospital and medical research center in Duarte, California, which is near Los Angeles. *Id.* ¶ 10.

Since 2003, Judge Pfaelzer of the Central District of California has presided over a number of lawsuits involving the Cabilly patents. In 2003, MedImmune sued Genentech and City of Hope seeking a declaration that the Cabilly II patent was invalid and not infringed by MedImmune. *MedImmune Inc. v. Genentech Inc., et al.*, No. 2:03-cv-02567 (C.D. Cal. filed Apr. 11, 2003). The parties engaged in discovery, and Judge Pfaelzer issued a claim construction order and ruled on other substantive motions. After extensive litigation, the case settled in 2008. Durie Decl. ¶¶ 4-5; Defs' Request for Judicial Notice, Ex. D (docket sheet).[1]

In 2008, Centocor filed suit against Genentech and City of Hope seeking a declaration that the Cabilly II patent was invalid and not infringed by Centocor. *Centocor v. Genentech Inc., et al.*, No. 2:08-cv-03573 (C.D. Cal. filed May 30, 2008). The *Centocor* case was originally assigned to a different judge in the Central District, and pursuant to Central District General Order 08-05 (Related Cases) the case was transferred to Judge Pfaelzer. Durie Decl. ¶¶ 6-7; Defs' Request for Judicial Notice, Ex. E (docket sheet). Judge Pfaelzer presided over discovery, issued a claim construction, and heard argument on summary judgment motions, which were pending when the case settled. Durie Decl. ¶¶ 6-7.

In 2010, Glaxo Group Limited, GlaxoSmithKline LLC ("GSK") filed a declaratory relief action against Genentech and City of Hope in the Northern District of California, alleging non-infringement and invalidity of the Cabilly II patent. *Glaxo Group Limited v. Genentech Inc., et al.*, No. C 10-00675 JSW (N.D. Cal. filed Feb. 17, 2010). The case was assigned to Judge White, who granted Genentech's

---

[1] The Court grants the parties' requests for judicial notice.

2

motion to transfer the case to the Central District of California. *Glaxo Group Limited v. Genentech Inc., et al.*, No. C 10-00675 JSW, 2010 WL 1445666 (N.D. Cal. Apr. 12, 2010). Judge White held,

> [J]udicial economy strongly favors transfer to the Central District of California. Judge Pfaelzer of the Central District of California has already heard portions of two related declaratory judgment actions brought against Genentech and City of Hope by other licensees of the Cabilly II Patent. *See MedImmune, Inc. v. Genentech, Inc.*, No. 2:03-cv-02567 (C.D. Cal. filed Apr. 11, 2003); *see also, Centocor Inc. v. Genentech*, Inc., No. 2:08-cv-03573 (C.D. Cal. filed May 30, 2008). The *MedImmune* case has settled, but involved extensive litigation including discovery, claim construction, and a decision by the United States Supreme Court. The *Centocor* case is still pending, but the Court has already completed claim construction and the parties have engaged in document and deposition discovery. Judge Pfaelzer has already expended great resources in constructing and interpreting the Cabilly II Patent in the *MedImmune* case and the *Centocor* case. Allowing the same court to construe the same patent in this action would save substantial resources of both the parties and the court. Thus, transferring this related action to the same court is the most effective administration of justice.

*Id.* at *3. After transfer, the case was assigned to Judge Pfaelzer, who again presided over discovery and claim construction. Durie Decl. ¶¶ 8-9. The parties filed summary judgment motions, which were pending when the case settled. *Id.*, Defs' Request for Judicial Notice, Ex. F (docket sheet).

In 2011, Human Genome Sciences, Inc. ("HGS") brought two lawsuits in the District of Delaware against Genentech and City of Hope, seeking a declaration of non-infringement, invalidity and unenforceability of the Cabilly II and Cabilly III patents. *Human Genome Sciences, Inc. v. Genentech Inc., et al.*, No. 11-082-LPS (D. Del. filed Jan. 25, 2011) (concerning Cabilly II patent); *Human Genome Sciences, Inc. v. Genentech Inc., et al.*, No. 11-328-LPS (D. Del. filed Apr. 12, 2011) (concerning Cabilly III patent). In July 2011, Judge Stark of the District of Delaware transferred both cases to the Central District of California, where they were assigned to Judge Pfaelzer. *Human Genome Sciences, Inc. v. Genentech Inc., et al.*, No. 11-082-LPS, 2011 WL 2911797 (D. Del. July 18, 2011) (concerning Cabilly II patent). In granting the motions to transfer the cases, Judge Stark found, *inter alia*,

> The cases that have been or are being litigated in the Central District have given the presiding judge there, U.S. District Judge Mariana R. Pfaelzer, an extensive nine-year-long experience with the Cabilly II patent. Judge Pfaelzer has presided over four litigations centered around the Cabilly patents, two of which are still pending. (See Tr. at 7) Some of these actions involve some of the same parties, the same accused product (i.e., Benlysta), and same patents (i.e., the Cabilly II and III patents) as are involved in the cases pending here, and all of the Central District cases involve technologies, products, and a field of prior art that are at least similar to those involved in the cases pending here. Although two of the prior cases in front of Judge Pfaelzer

3

settled before she addressed the merits, among the four actions she has issued three claim construction orders, heard fourteen summary judgment motions, presided over nine hearings, issued twenty-five substantive orders, and reviewed over 800 docket entries. She considers herself "a student of Cabilly II," being very familiar with the prosecution history, including the interference and reexamination record. (D.I. 15 Ex. A at 4) Although Judge Pfaelzer denied a motion to "add Benlysta to [her] case," she did state that she "would be prepared to take the Benlysta case," although "that's up to the other judge." (D.I. 25 Ex. A at 77) Judge Pfaelzer went as far as to say, "I would certainly be happy to take that [the Benlysta] case." ( Id. at 79) Judge Pfaelzer seems to have denied the motion to add HGS in her case to afford this Court the opportunity to resolve the present transfer motions. (See id. at 82) ("You can do whatever you do in Delaware. I'm prepared to take that. If the judge agrees, we could expedite it, but I'm not going to add another product to this case until that judge has a chance to look at the problem.").

Accordingly, the Court finds the practical considerations—and most especially that Judge Pfaelzer has almost a decade of experience with the Cabilly II patent and is willing to preside over the instant actions, in addition to the related actions already pending before her—weigh heavily in favor of transfer.

*Id*. at *10.

In 2013, ImClone and Eli Lilly & Co. filed a lawsuit in the Northern District of California against Genentech and City of Hope seeking a declaration that Erbitux® does not infringe,[2] and that the Cabilly II and III patents are invalid and unenforceable. *Eli Lilly & Co. v. Genentech, Inc.*, C No. 4:13-cv-00919 YGR. Judge Gonzales Rogers determined that the *Eli Lilly* case was not related to the present case. *See id*., Docket No. 67. The defendants have moved to transfer the *Eli Lilly* case to the Central District of California, and that motion is pending.

### LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil matter to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of § 1404(a) is to "prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal citations and quotation omitted). A motion for transfer lies within the broad discretion of the district court, and must be determined on an individualized basis. *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000).

---

[2] Eli Lilly co-developed Erbitux® with plaintiff Bristol-Myers. Compl. ¶ 27.

4

To support a motion for transfer, the moving party must establish: (1) that venue is proper in the transferor district; (2) that the transferee district is one where the action might have been brought; and (3) that the transfer will serve the convenience of the parties and witnesses, and will promote the interests of justice. *See Goodyear Tire & Rubber Co. v. McDonnell Douglas Corp.*, 820 F. Supp. 503, 506 (C.D. Cal. 1992). Transfer is discretionary, but is governed by certain factors specified in § 1404(a) and in relevant case law.

**DISCUSSION**

Defendants move to transfer this case to the Central District of California. Defendants contend that the interests of justice favor transfer to conserve judicial resources and "to allow Judge Pfaelzer to apply her expertise to resolve allegations she has addressed on four prior occasions." Motion at 6:15-16. Defendants also argue that the most recent published statistics show that the relative congestion of the courts' docket and median time to trial favor transfer, with the median time for all case dispositions in the Central District at 5.3 months versus 7.3 in the Northern District and the median time to trial at 19.5 months in the Central District and 27.7 months in the Northern District. *See* http://www.uscourts.gov/uscourts/Statistics/FederalJudicialCaseloadStatistics/2012/tables/C05Mar12.pdf at p. 3. Defendants also argue that on balance, the convenience factors are neutral because, *inter alia*, the Central District is more convenient for defendant City of Hope, which is located in Los Angeles, Genentech is located in Northern California but has litigated Cabilly patent cases in the Central District for a decade, plaintiff is based in New York, and the principal witnesses are not concentrated in either forum.

Plaintiff opposes transfer and argues that the Northern District is the center of gravity of this case. Plaintiff asserts that this district is where Genentech prosecuted the patents-in-suit; where the research, development and manufacture of one of the allegedly infringing products took place; and where Genentech and Bristol-Myers negotiated and executed the patent license agreement. Plaintiff also contends that its choice of forum is due deference, that this district is convenient because all of the parties have a presence here, and a number of witnesses are located here. Plaintiff acknowledges that Judge Pfaelzer "certainly does have experience with the Cabilly family of patents," but notes that Judge

Pfaelzer only issued claim constructions of the Cabilly II patent and did not rule on any summary judgment motions. Plaintiff also asserts that "[t]he construction of claim terms for the Patents-in-Suit with respect to infringement of the accused Yervoy® and Erbitux® products in this litigation will largely be a matter of first impression for any judge hearing the case." Opp'n at 11:3-5. Finally, plaintiff notes that the license agreement in the *Eli Lilly* case pending before Judge Rogers contains a forum selection clause designating the Northern District as the appropriate venue, and that should Judge Rogers uphold the forum selection clause in that case, plaintiff "should receive the benefit of the forum selection clause designating the Northern District as the place where this dispute [involving Erbitux®] must be resolved." Opp'n at 9:27-10:1.

The Court has discretion "to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Jones*, 211 F.3d at 498 (quoting *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). As an initial matter, the Court finds that venue is proper pursuant to 28 U.S.C. § 1391(b) in this District, as well as in the Central District of California. The parties do not dispute that this case could be brought in either venue.

The Court finds that the interests of justice—in particular judicial efficiency and uniformity of claim construction—weigh in favor of transferring this case to the Central District of California pursuant to 28 U.S.C. section 1404(a). *See In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010) ("[C]ourts have consistently held that judicial economy plays a paramount role in trying to maintain an orderly, effective, administration of justice."); *Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997) (judicial economy "may be determinative to a particular transfer motion, even if the convenience of the parties and witnesses might call for a different result"). Transferring this case will allow Judge Pfaelzer to apply the expertise she has gained through presiding over numerous lawsuits involving the Cabilly patents, including issuing multiple claim constructions and hearing substantive arguments about invalidity. *Accord Cisco Sys., Inc. v. TiVo, Inc.*, No. C 12-02766 RS, 2012 WL 3279532, at *6 (N.D. Cal. Aug. 10, 2012) (citation omitted) (granting motion to transfer patent case to jurisdiction already familiar with the relevant technology because "[a]nalyzing the interests of justice entails an inquiry into 'whether efficient and expeditious administration of justice would be furthered by transfer.'"); *Szegedy v. Keystone Food Prods., Inc.*, No. CV 08-5369 CAS, 2009 WL 2767683, at

6

\*6 (C.D. Cal. Aug. 29, 2009) (granting motion to transfer case to forum where judge in transferee forum had "extensive experience with these factual allegations and claims in previous cases . . . and is therefore in the best position to consider plaintiff's claims here."). Although Judge Pfaelzer has not construed the claims of the Cabilly III patents, the Cabilly II and Cabilly III patents share the same specification and many common terms. *Accord NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1293 (Fed. Cir. 2005) ("Because NTP's patents all derive from the same parent application and share many common terms, we must interpret the claims consistently across all asserted patents."). Further, although plaintiff argues that this case involves new accused products and thus presents issues of first impression for any judge, the complaint alleges that "the recombinant methods used to produce Erbitux and Yervoy are similar to the methods used by MedImmune, Centocor, GSK and HGS to produce the monoclonal antibody products that were the subject of those parties' respective infringement lawsuits concerning the Cabilly patents." Compl. ¶ 39.

The Court also finds that the presence of a forum selection clause in the Genentech-Eli Lilly license in *Eli Lilly* is irrelevant to the Court's determination of the transfer motion in this case. Plaintiff is not a party to that license, and the *Eli Lilly* case has been deemed unrelated to this case.

Finally, plaintiff has failed to show that the convenience factors overcome the weight of judicial efficiency. The Court is not persuaded by plaintiff's arguments that this district is more convenient to Genentech and its witnesses. *See Glaxo Group Limited v. Genentech Inc., et al.*, No. C 10-00675 JSW, 2010 WL 1445666, at \*4 (N.D. Cal. Apr. 12, 2010) ("The Court affords little weight to GSK's argument that it is more convenient for Defendants to litigate in this District when Defendants have requested to transfer this case."). The record before the Court indicates that witnesses will be required to travel to either forum: one inventor of the Cabilly patents resides in the Central District and one resides in the Northern District, and the other inventors live in Oregon, Pennsylvania, Washington and Israel. Durie Decl. ¶ 15. Documents are physically located both at Genentech's office in the Northern District and at City of Hope's office in Los Angeles, and in any event will be produced in electronic form such that the physical location of documents is of less importance to the analysis. While the Court does give plaintiff's choice of forum some weight, that factor, when considered with the other factors in the transfer analysis, is insufficient to deny transfer.

7

**CONCLUSION**

In sum, the Court concludes that the § 1404(a) factors weigh in favor of transferring this action to the Central District of California. The Court exercises its discretion and GRANTS defendants' motion to transfer venue. Docket No. 19.

**IT IS SO ORDERED.**

Dated: July 23, 2013

SUSAN ILLSTON
United States District Judge